[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT AETNA CASUALTY SURETY CO.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS ONE THROUGH FOUR AND NINE THROUGH TWENTY OF THE FOURTH AMENDED COMPLAINT DATED DECEMBER 1, 1992
FACTUAL BACKGROUND
Aetna Casualty Surety Co. ("Aetna") filed a motion for summary judgment dated December 1, 1992 on counts one through four and nine through twenty of the fourth amended complaint filed by Reichhold Chemicals, Inc. ("Reichhold"). In those counts, Reichhold alleges that its insurer, Aetna, is responsible for costs Reichhold has incurred in defending environmental actions brought by the New Jersey Department of Environmental Protection ("New Jersey DEP"), State of Washington Department of Ecology ("Washington DOE") and United States Environmental Protection Agency ("EPA"). Reichhold further alleges that Aetna is responsible for the costs of environmental cleanup undertaken by Reichhold as a result of those administrative actions at four of Reichhold's former chemical manufacturing plants in Rockport, Elizabeth and Carteret, New Jersey, and Tacoma, Washington pursuant to the terms of various insurance policies issued to Reichhold by Aetna. Aetna moves for summary judgment on the ground that Reichhold failed to timely notify Reichhold of the occurrences that gave rise to Reichhold's claims under the insurance policies. Aetna has filed several memoranda of law, affidavits, and documentary exhibits in support of its motion. Reichhold has filed several memoranda of law, affidavits and documentary exhibits in opposition to Aetna's motion.
By "Memorandum of Decision on Plaintiff's and Certain CT Page 10279 Defendants' Motions for Summary Judgment Re: Choice of Law" filed March 2, 1993, this court decided that New York law applies to the issues presented in this motion.
DISCUSSION
Summary judgment is appropriate when the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book 384; see Gurliacci v. Mayer, 218 Conn. 531, 562,290 A.2d 914 (1991); Lees v. Middlesex Ins. Co., 219 Conn. 644, 650,594 A.2d 952 (1991). The motion for summary judgment is "designed to eliminate the delay and expense incident to a trial where there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). "The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted; citations omitted.) Connecticut Bank Trust Co. v. Carriage Lane Associates, 219 Conn. 772, 781, 595 A.2d 334
(1991).
The party moving for summary judgment bears the burden of proving the absence of a dispute as to any material fact. Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988). Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. Daily v. New Britain Machine Co., 200 Conn. 562,568, 512 A.2d 893 (1986). It is not enough for the opposing party merely to assert the existence of a disputed issue. Id., 569.
The following facts are undisputed. Aetna issued several Comprehensive Liability Policies to Reichhold for the period from January 1, 1965 through January 1, 1972. (Vogt Affidavit, Exhibit 2). The policies require notice to Aetna of an "occurrence" "as soon as practicable" after it becomes known to the insurance department of the insured. (Vogt Affidavit, Exhibit 2). An "occurrence" is defined as "an accident, including injurious exposure to conditions, which results, during the policy period in bodily injury or property damage neither expected nor intended from the standpoint of the insured."[1] The policies also require notice to Aetna of a "claim" or "suit" "immediately." (Vogt Affidavit, Exhibit 2). CT Page 10280
Reichhold entered into an administrative consent order with the New Jersey DEP with respect to the Rockport, New Jersey site on June 30, 1985. (Vogt Affidavit, Exhibits 3, 4). Reichhold entered into an administrative consent order with the New Jersey DEP with respect to the Elizabeth, New Jersey site on September 29, 1987. (Vogt Affidavit, Exhibits 3, 5). Reichhold entered into an administrative consent order with the New Jersey DEP with respect to the Carteret, New Jersey site on June 27, 1986. (Vogt Affidavit, Exhibits 3, 6). Reichhold entered into a consent agreement and order with the EPA and the Washington DOE with respect to the Tacoma, Washington site on June 30, 1986. (Vogt Affidavit, Exhibits 3, 7). Reichhold notified Aetna of the administrative actions with respect to all four sites on September 28, 1988. (Vogt Affidavit, Exhibit 3).
Aetna argues that under New York law, Reichhold's notice to Aetna regarding the four sites was untimely as a matter of law. Aetna asserts that whether the notice is considered to be of "occurrences" or "claims or suits," because it was given from one to over three years after Reichhold entered into consent orders with respect to the various sites, the notice was not given either "as soon as practicable" or "immediately" as required under the terms of the policies.
Reichhold claims that material issues of fact remain as to whether its notice to Aetna was reasonable under the circumstances. Reichhold argues that Aetna has not offered any evidence as to when Reichhold's insurance department had knowledge of "occurrences" at the sites, or as to when Reichhold knew that it would incur significant liability with respect to the sites. Reichhold further argues that a questions of fact exist as to whether Reichhold had knowledge that allegations in the administrative consent orders related to covered "property damage" that might exist at the sites, and when Reichhold knew that covered property damage may have taken place during Aetna's coverage period. Reichhold further maintains that notice to Aetna at any time would have been futile, and thus was superfluous, because Aetna asserted "[e]very conceivable excuse for avoiding its coverage no matter when it received notice." (Reichhold's Memorandum in Support of its Motion for Summary Judgment Against Hartford Accident Indemnity Co. and in Opposition to the Motions of Hartford and Aetna for Summary Judgment dated April 19, 1993, CT Page 10281 p. 4). Reichhold also argues that public policy considerations mandate rejection of New York's law requiring forfeiture of coverage as a strict remedy for late notice.
"In assessing an insurer's claim of an untimely notice of occurrence, `[t]he test for determining whether the notice provision has been triggered is whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim.'" Olin Corp. v. Ins. Co. of North America, 966 F.2d 718, 723 (2d Cir. 1992), quoting Commercial Union Ins. Co. v. International Flavors 
Fragrances, Inc., 822 F.2d 267, 272 (2d Cir. 1987). "[A] provision that notice be given `as soon as practicable' after an accident or occurrence, merely requires that notice be given within a reasonable time under all the circumstances." Security Mutual Ins. Co. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436,441, 340 N.Y.S.2d 902, 906, 293 N.E.2d 76 (1972); see Power Authority v. Westinghouse Electric Corp., 502 N.Y.S.2d 420,422 (A.D. 1 Dept. 1986). While "`the phrase "as soon as practicable" is an elastic one, not to be defined in a vacuum,' and `there is no inflexible test of reasonableness' . . . the insured has the burden of demonstrating that the delay in question was reasonable." (Citations omitted.) Heydt Contracting Corp. v. American Home Assurance Co., 536 N.Y.S.2d 770, 772 (A.D. 1 Dept. 1989).
 There may be circumstances, such as lack of knowledge that an accident has occurred, that will explain or excuse delay in giving notice and show it to be reasonable. . . . But the insured has the burden of proof thereon. . . . Moreover, [the insured] must exercise reasonable care and diligence to keep [itself] informed of accidents out of which claims for damages may arise.
(Citations omitted.) Security Mutual Ins. Co. v. Acker-Fitzsimons Corp., supra, 905-06.
 [A] good-faith belief of nonliability may excuse or explain a seeming failure to give timely notice. . . . But the insured's belief must be reasonable under all the circumstances, and it may be relevant on the issue of reasonableness, whether and to what extent, the insured has inquired CT Page 10282 into the circumstances of the accident or occurrence.
Id., 906. Although what is reasonable is usually left for determination at trial, where there is no excuse for the delay and mitigating considerations are absent, the issue may be disposed of as a matter of law before trial. Power Authority v. Westinghouse Electric Corp., supra; see Heydt Contracting Co. v. American Home Assurance Co., supra. "Relatively short periods of unexcused delay have been found to be unreasonable as a matter of law." Power Authority v. Westinghouse Electric Corp., supra (court held delay of fifty-three days unreasonable as a matter of law, citing cases where New York courts have found short delays from ten to fifty-one days to be unreasonable as a matter of law); see Heydt Contracting Corp. v. American Home Assurance Co., supra (unexcused delay in excess of four months unreasonable as a matter of law).
"An insurance company is entitled to require notice at the earliest time practicable after a loss has occurred." Utica Mutual Ins. Co. v. Fireman's Fund Ins. Co., 748 F.2d 118,121 (2d Cir. 1984). "Prompt notice permits the insurer to investigate the facts on which the claim is predicated and to adjust its books in order to maintain a proper reserve fund in light of the insured's claim." Id. "`Compliance with a notice of occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy.'" Olin Corp. v. Ins. Co. of North America, supra, 723, quoting Commercial Union Ins. Co. v. International Flavors 
Fragrances, Inc., supra, 271. "New York law permits an insurance company to assert the defense of non-compliance without showing that the lack of timely notice prejudiced the insurer in any way." Utica Mutual Ins. Co. v. Fireman's Fund Ins. Co., supra; see Olin Corp. v. Ins. Co. of North America, supra.
The court finds that the administrative consent orders that Reichhold entered into gave Reichhold at the very least notice of the possibility of a claim. Reichhold asserts in its April 19, 1993 memorandum that the consent orders merely required Reichhold to investigate whether any contamination existed, and thus Reichhold did not know at the time of the consent orders of the "seriousness" of the "occurrences" or that it would incur "significant" liability with respect to the sites. (See Reichhold's April 19, 1993 Memorandum, p. 32). CT Page 10283 However, the wording of the New Jersey consent orders require Reichhold to submit a site evaluation or complete an initial notice, submit results from any New Jersey DEP approved sampling plan, submit a negative declaration or implement any New Jersey DEP approved cleanup plan, and provide financial assurances. (Vogt Affidavit, Exhibits 4, 5, 6). In the Washington consent order, the Washington DOE and the EPA determined that Reichhold violated state and federal environmental laws and regulations, and required Reichhold to submit a permit application, maintain financial responsibility for liability, submit various plans and schedules for sampling, and take further actions as necessary to comply with state and federal law. (Vogt Affidavit, Exhibit 7). Such requirements would reasonably put Reichhold on notice that it might incur liability or expense for cleaning up any pollution found at the site. Further, in its fourth amended complaint Reichhold alleges that Reichhold is a party in administrative actions "in which it is alleged that Reichhold is, or may be, responsible for property damage or bodily injuries relating to alleged environmental hazards" at the sites, and that "[t]he allegations asserted against Reichhold in the foregoing administrative action[s] seek damages that are covered by the insurance policies sold to Reichhold." (Fourth Amended Complaint, counts 1-4, paras. 20, 21; counts 9-12, paras. 19, 20; counts 13-16, paras. 20, 21; counts 17-20, paras. 20, 21). Reichhold has not offered any evidence in response to Aetna's summary judgment motion which would show that the consent orders are not the "administrative action[s]" referred to by Reichhold in its fourth amended complaint.[2] Thus, Reichhold's own characterization of the "administrative actions" would indicate that at the very least, at the time it entered into the consent orders, Reichhold had notice of the "possibility of a claim."
The sole evidence Reichhold has presented on this issue is the affidavit of Michael Kowalski, Reichhold's Director of Site Remediation. (See Kowalski Affidavit, attached to Reichhold's April 19, 1993 memorandum). However, the contents of this affidavit do not dispute Aetna's contention that Reichhold had notice of the "occurrences" or "possibilities of claims" at the time Reichhold's officials entered into the consent orders. In his affidavit, Kowalski asserts that Reichhold received the first reports of groundwater contamination at the sites on dates later than the dates upon which Reichhold's officials entered into the consent orders.[3]
CT Page 10284 An affidavit in which a Reichhold employee states that Reichhold received the first reports of groundwater contamination after the effective dates of the consent orders does not dispute Aetna's contention that Reichhold had notice of "occurrences" or "possibilities of claims" earlier, when Reichhold officials entered into the consent orders. The affidavit merely shows that Reichhold received the first reports of groundwater contamination later. Accordingly, from the wording of the consent orders and the allegations regarding those consent orders, or "administrative action[s]," in Reichhold's fourth amended complaint, and in light of Reichhold's failure to submit any evidence which would show that its entry into the consent orders did not constitute sufficient notice of an "occurrence" or "possibility of a claim," this court must find as a matter of law that Reichhold did have notice when its officials entered into the consent orders.
Reichhold claims in its April 19, 1993 memorandum that pursuant to the terms of the Aetna policies, it is required to notify Aetna as soon as practicable after its insurance department knows of an occurrence and that an issue of fact remains as to when its insurance department knew of "occurrences" at the sites. In support of its motion for summary judgment, Aetna has submitted copies of the consent orders for the Rockport and Tacoma sites signed by Paul Dixon, Vice President, General Counsel and Secretary at Reichhold (See Vogt Affidavit, Exhibits 4, 7), the consent order for the Elizabeth site signed by T. R. Mitchell, Executive Vice President (Vogt Affidavit, Exhibit 5), and the consent agreement and order for the Carteret site signed by J. R. Olson, Executive Vice President (Vogt Affidavit, Exhibit 6). Reichhold has not offered any evidence to refute Aetna's claim that Reichhold, including its insurance department, had notice of occurrences at the time these officials signed the consent orders. Merely asserting that when its insurance department knew of occurrences at the site is a question of fact is insufficient to withstand a summary judgment motion. As stated above, it is not enough for a party opposing summary judgment merely to assert the existence of a disputed issue, it must present evidence that demonstrates the existence of some disputed factual issue. See Daily v. New Britain Machine Co., supra, 568, 569. Because Reichhold has not submitted any affidavits or documentary evidence which shows the existence of a dispute with respect to when its insurance department CT Page 10285 knew of occurrences at the sites, this court finds that no genuine issue of material fact exists and that Reichhold's insurance department had notice of occurrences at the site at the latest at the time that Reichhold officials entered into the consent orders.
Reichhold asserts in its April 19, 1993 memorandum that issues of fact remain as to whether any delay in notifying Aetna may be excused because Reichhold was "confused" as to the existence of coverage and whether it knew that any damage or liability accrued during Aetna's coverage period. (Reichhold's April 19, 1993 Memorandum, pp. 32, 33). However, Reichhold has not offered any affidavits or documentary evidence in support of these assertions. As stated above, it is not enough for a party opposing summary judgment merely to assert the existence of a disputed issue; the opposing party must present evidence that demonstrates the existence of some disputed factual issue. Id. Under New York law, the burden of proof is on the insured, Reichhold, to demonstrate circumstances explaining or excusing the delay. See Security Mutual Ins. Co. v. Acker-Fitzsimons Corp., supra, 905-06; Heydt Contracting Corp. v. American Home Assurance Co., supra. Because the burden of proof is on Reichhold to show circumstances explaining or excusing the delay, Aetna need not submit proof of the absence of any excuse for the delay in support of its motion for summary judgment. To raise a genuine issue of material fact as to whether any delay in notifying Reichhold was excusable, Reichhold would have to submit affidavits or other documentary evidence from which the court could find that such an issue of fact exists, rather than merely asserting in an opposing memorandum that questions of fact exist as to when Reichhold "knew of the seriousness of the `occurrences' and whether notice was given within a reasonable time thereafter," or whether Reichhold may have had an excuse for any delay because "Reichhold reasonably could have been . . . confused about the extent of its coverage." (Reichhold's April 19, 1993 Memorandum, pp. 32, 33). Accordingly because Reichhold presented no affidavits or evidence in support of its assertions, the court finds that no genuine issue of material fact remains as to whether an excuse or other mitigating considerations existed which reasonably justified Reichhold's delay in notifying Aetna of the "occurrences" at the sites.
Reichhold also asserts in its April 19, 1993 memorandum CT Page 10286 that notice to Aetna at any time would have been futile. However, Reichhold has not offered any affidavits or other documentary evidence in support of this assertion. Accordingly, the court finds that no genuine issue of material fact remains as to whether Reichhold's notice to Aetna would have been futile.
Finally, Reichhold claims that the application of New York law, which does not require that an insurer show prejudice in order to assert the defense of late notice, violates public policy. This court has determined that New York law applies to the issues raised in Aetna's motion. While Connecticut has adopted a requirement that an insurer show that it was prejudiced by late notice; see Aetna Casualty Surety Co. v. Murphy, 206 Conn. 409, 538 A.2d 219 (1988); this case is governed by New York law, which does not require a showing of prejudice. See Utica Mutual Ins. Co. v. Fireman's Fund Ins. Co., supra; Olin Corp. v. Ins. Co. of North America, supra. Simply because New York law does not require a showing of prejudice and Connecticut law requires such a showing does not mean that the application of New York law in Connecticut would violate public policy in Connecticut. Even though Connecticut, along with many other jurisdictions, may have had a number of reasons for adopting the prejudice requirement, see Aetna Casualty Surety Co. v. Murphy, supra; nothing in the Murphy decision indicates that applying the law of another jurisdiction that does not require a showing of prejudice would violate Connecticut's public policy. This court finds that Reichhold has not met its burden of showing that the application of New York's law regarding late notice would violate public policy in Connecticut.
Accordingly, in summary the court finds as a matter of law that Reichhold had notice of "occurrences" or "possibilities of claims" at the sites when its officials entered into the consent orders, and that Reichhold did not notify Aetna of the "occurrences" from one to over three years after its officials entered into the consent orders. The court finds that no genuine issue of material fact remains as to any excuse or explanation for Reichhold's delay in notifying Aetna. In light of the New York cases cited above where courts have found much shorter delays robe unreasonable as a matter of law, this court must find that Reichhold's notice, sent from one to over three years after its officials entered into the consent orders, failed to comply with the CT Page 10287 notice provision in the Aetna policies requiring notice of an "occurrence" "as soon as practicable" after such occurrence becomes known to the insurance department of the insured. See Power Authority v. Westinghouse Electric Corp., supra; Heydt Contracting Corp. v. American Home Assurance Co., supra. Further, as stated above, under New York law, Aetna need not show that it was prejudiced by the late notice. See Utica Mutual Ins. Co. v. Fireman's Fund Ins. Co., supra; Olin Corp. v. Ins. Co. of North America, supra. The court also finds that Reichhold has not shown that the court's application of New York law to the issues raised in Aetna's motion would violate public policy in Connecticut. Accordingly, Aetna's motion for summary judgment on counts one through four and nine through twenty of Reichhold's fourth amended complaint is granted on the ground that as a matter of law Reichhold did not give Aetna notice as soon as practicable as required under the policies.
Freed, J.