Wilmington Trust v MC-Five Mile Commercial Mtge. Fin. LLC (2019 NY Slip Op 02988)





Wilmington Trust v MC-Five Mile Commercial Mtge. Fin. LLC


2019 NY Slip Op 02988


Decided on April 23, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 23, 2019

Friedman, J.P., Sweeny, Tom, Moulton, JJ.


9053 653546/16

[*1]Wilmington Trust, etc., Plaintiff-Appellant,
v
MC-Five Mile Commercial Mortgage Finance LLC, Defendant-Respondent.


Binder & Schwartz LLP, New York (Eric B. Fisher of counsel), for appellant.
Winston & Strawn LLP, New York (Christopher C. Costelo of counsel), for respondent.



Order, Supreme Court, New York County (Gerald Lebovits, J.), entered August 20, 2018, which denied plaintiff's motion for partial summary judgment on its cause of action seeking specific performance of a contract, with leave to renew after completion of discovery, unanimously reversed, on the law, without costs, and the motion granted.
Plaintiff trust consists of a pool of mortgage loans purchased from various mortgage loan sellers, including defendant. Plaintiff alleges that defendant breached one of the representations and warranties it made upon sale of one of the loans and that the breach had a material and adverse effect. As a result, plaintiff claims that it is entitled to exercise its right under the governing mortgage loan purchase agreement (MLPA) to have defendant repurchase the loan.
The record demonstrates as a matter of law that defendant breached Representation and Warranty No. 40 in the MLPA, because it had knowledge that the subject loan was in default at the time of closing. It is undisputed that the lockbox agreement required by the loan documents was not timely completed and that this constituted an event of default thereunder. Defendant's denial that it had knowledge of these facts is belied by the evidence.
Defendant was a required party to the lockbox agreement; as such, it must have known that it never signed the agreement. Moreover, the record reflects that, just weeks after the MLPA was executed, defendant's counsel was still actively negotiating the lockbox agreement and was aware that the loan had been operating without such an agreement since closing. The knowledge of defendant's counsel, who is defendant's agent, is properly imputed to defendant (see Center v Hampton Affiliates, 66 NY2d 782, 784 [1985]).
At the very least, these facts demonstrate that defendant was willfully blind with respect to the status of the lockbox agreement, which is evidence that defendant had knowledge of that status (see Homeward Residential, Inc. v Sand Canyon Corp., 2017 WL 4676806, *20, 2017 US Dist LEXIS 171685, *58 [SD NY Oct. 17, 2017]; see also Matter of Scher Law Firm, LLP v DB Partners I, LLC, 97 AD3d 590, 592 [2d Dept 2012], lv denied 20 NY3d 852 [2012]).
The fact that the loan servicer did not identify the missing lockbox agreement in its letter certifying the absence of any defaults is immaterial, as the MLPA specifically provided that no due diligence by that entity would relieve defendant "of any liability or obligation with respect to any representation or warranty."
Plaintiff also established that the breach had the requisite material and adverse effect by increasing the risk of loss (see Mastr Adjustable Rate Mtges. Trust 2006-OA2 v UBS Real Estate Sec. Inc., 2015 WL 764665, *15, 2015 US Dist LEXIS 24988, *42-44 [SD NY Jan. 9, 2015]; Assured Guar. Mun. Corp. v Flagstar Bank, FSB, 892 F Supp 2d 596, 602 [SD NY 2012]; see also MBIA Ins. Corp. v Countrywide Home Loans, Inc., 105 AD3d 412, 413 [1st Dept 2013]). In addition, plaintiff established, and defendant failed to controvert through admissible evidence, that, had a lockbox been in place, the underlying property's net operating income would have [*2]been sufficient to cover its expenses, from which it follows that the absence of a lockbox caused plaintiff to advance more than $400,000 in servicing expenses to protect its interest in the property.
Finally, on this record, plaintiff did not waive the MLPA's lockbox requirement, nor is it estopped to seek remedies for that default. Defendant's waiver and estoppel arguments are based entirely on the allegation, in the affirmation of an attorney who was acting for defendant at the time, that counsel for the Special Servicer (acting on behalf of plaintiff) told him in an August 2015 telephone call to "cease all further action with respect to the [lockbox agreement]" and that the Special Servicer's counsel "would be the ones to handle the matter going forward." Assuming that this account is accurate, the statement of the Special Servicer's counsel that it would take over efforts to rectify the lack of a lockbox, standing alone (and defendant offers nothing more), cannot be deemed to have waived plaintiff's right to pursue its remedies against defendant under the MPLA in the event the Special Servicer's efforts were unavailing (see Gilbert Frank Corp. v Fed. Ins. Co., 70 NY2d 966, 968 [1988] [waiver is the voluntary and intentional relinquishment of a known right and "should not be lightly presumed"]; see also Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., 7 NY3d 96, 104 [2006] [waiver must be based on a party's "clear manifestation of intent"]). In any event, section 19 of the MPLA provides that the none of its terms "may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought" (see DLJ Mtge. Capital Corp., Inc. v Fairmont Funding, Ltd., 81 AD3d 563, 564 [1st Dept 2011]; Awards.com v Kinko's, Inc., 42 AD3d 178, 188 [1st Dept 2007]). Since the Special Servicer's counsel's alleged oral statement cannot be construed as a promise not to pursue plaintiff's contractual remedies for the breach, no estoppel arises.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: APRIL 23, 2019
CLERK